# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>                v.<br><br>COMMERCEWEST BANK,<br><br>        Defendant. | No.: CV-15-00379<br><br>CONSENT DECREE FOR<br>PERMANENT INJUNCTION AND<br>CIVIL MONEY PENALTY |

**WHEREAS**, plaintiff United States of America (the "United States") commenced this action against defendant CommerceWest Bank,  ("Defendant" or the "Bank") by filing a civil Complaint seeking a civil money penalty pursuant to the Financial Institutions Reform, Recovery and Enforcement Act, 12 U.S.C. § 1833a ("FIRREA") and an injunction pursuant to 18 U.S.C. § 1345 and the court's equitable powers;

**WHEREAS**, Defendant waives service of the Complaint;

**WHEREAS**, the United States and Defendant stipulate to entry of this Consent Decree for Permanent Injunction and Civil Money Penalty ("Consent Decree") to resolve the claims in the Complaint;

**NOW, THEREFORE**, the parties hereby AGREE and it is ORDERED as follows:

## I.     FINDINGS

A.     The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1345 (United States as plaintiff).   Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b) because Defendant operates and maintains management offices and operations centers in this

1

district, and a substantial part of the events or omissions giving rise to the claims alleged in the Complaint occurred in this district.

B.      The United States alleges in the Complaint violations of FIRREA, 12 U.S.C. § 1833a, and seeks injunctive relief pursuant to 18 U.S.C. § 1345.

C.      This Consent Decree is neither an admission of liability by Defendant, nor a concession by the United States that its claims are not well founded.   Only for purposes of this action, Defendant admits that the Court has jurisdiction as to Defendant and as to this action.

D.      Defendant knowingly and voluntarily waives any claim that it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Consent Decree, and agrees to bear its own costs and attorneys' fees.   Should the United States bring, and prevail in, a contempt action to enforce the terms of this Consent Decree, Defendant shall, in addition to other remedies, reimburse the United States for its attorneys' fees, investigational expenses, expert witness fees, travel expenses incurred by attorneys and witnesses, administrative and court costs, and any other costs or fees, including overhead, related to such contempt proceedings.

E.      Defendant waives all rights to appeal or otherwise challenge or contest the validity of this Consent Decree.

## II.   <u>DEFINITIONS</u>

For purposes of this Consent Decree, the following definitions apply:

A.      "Automated Clearinghouse" or "ACH" means a facility that processes debit and credit transfers under rules established by a Federal Reserve Bank operating circular on automated clearinghouse items or under rules of an automated clearinghouse association, such as NACHA, as further defined in and governed by Regulation CC, as amended, 12 C.F.R. Part 229.

B. "Internet-based Business" means any entity that markets, offers, or provides products or services, and that accepts authorizations for transactions from consumers, exclusively via the Internet.

C. "Merchant" means any entity that markets, offers, or provides products or services, and that accepts authorizations for financial transactions from consumers.

D. "Originating Depository Financial Institution" or "ODFI" means a depository financial institution that has made an arrangement with another entity to transmit ACH, RCC, or RCPO entries into a payment system on behalf of that entity or another entity, or transmits such entries into a payment system on its own behalf.

E. "Permitted Change of Control" means any of the following transactions between the Bank and a Qualified Acquirer: (i) any merger, recombination, recapitalization or other reorganization, immediately following which the holders of the Bank's capital stock cease to own at least a majority of the capital stock of the surviving entity or resulting bank as measured immediately after such transaction; (ii) the acquisition, in one transaction or a series of related transactions, of shares of capital stock representing more than 50% of the combined voting power of the Bank's capital stock; or (iii) the acquisition, in one transaction or a series of related transactions of all or substantially all of the assets of the Bank.

F. "Qualified Acquirer" means any bank, bank holding company or financial holding company (as such terms are defined for purposes of the Bank Holding Company Act of 1956, as amended) that has (or, in the case of a bank holding company or financial holding company, whose principal subsidiary bank has) a composite rating of "satisfactory" or "2" or higher under the Uniform Financial Institutions Rating System, and which is (or, in the case of a bank holding company or financial holding company, whose principal subsidiary bank is) both "well capitalized" and "well managed" within the meaning of the Federal Deposit Insurance Act.

G.     "Remotely-created Check" or "RCC" means a check that is not created by the paying bank and that does not bear a signature applied, or purported to be applied, by the person on whose financial account the check is drawn, as further defined in and governed by Regulation CC, as amended, 12 C.F.R. Part 229.   A Remotely-created Check is often also referred to as a "demand draft," "bank draft," "bank check," or "preauthorized draft."   For purposes of this definition, an RCC originates as a paper-based transaction, and can be processed subsequently through electronic means (such as through check imaging or scanning), or through non-electronic means.

H.     "Remotely-created Payment Order" or "RCPO" means a payment instruction or order drawn on a person's financial account that is initiated or created by the payee and that does not bear a signature applied, or purported to be applied, by the person on whose financial account the order is drawn, and which is deposited into or cleared through the check clearing system.   For purposes of this definition, unlike a Remotely Created Check, a Remotely Created Payment Order does not originate as a paper-based transaction.   A RCPO is created when a seller, merchant, payment processor, or other entity enters financial account and routing numbers into an electronic check template that is converted into an electronic file for deposit into the check clearing system."

I.     "Return Rate Threshold" means, for any merchant with more than 50 debit transactions in a calendar month, a debit return ratio during that calendar month of:

1.     one-half of one percent (0.5%) for Unauthorized returns (NACHA Reason Codes R05, R07, R10, R29, R37, and R51);

2.     three percent (3%) for   Account Data Quality returns (NACHA Return Reason Codes R03, R04, or R20); or

3.     fifteen percent (15%) for   returns for any reason (excluding RCK entries).

1    J.      "Telemarketing" means a plan, program, or campaign which is

2  conducted to induce the purchase of goods or services or a charitable contribution by

3  use of one or more telephones, whether or not covered by the Federal Trade

4  Commission Telemarketing Sales Rule, 16 C.F.R. Part 310.

5    K.      "Third-party Payment Processor" means:   (a) a non-financial

6  institution entity or person that is a customer or vendor of a financial institution and

7  that holds a deposit account at that financial institution directly or on behalf of its

8  merchant clients (except entities and persons that have an express agency agreement

9  with a financial institution);   (b) that provides, directly or indirectly, the means used

10 to debit accounts through credit cards, the ACH network, or the check payment

11 system, through that financial institution acting as the ODFI; and (c) that is, in whole

12 or in part, in the business of (i) providing the means to transmit money from a

13 financial institution to any merchant;   (ii) providing the means to transmit

14 transaction data from merchants to financial institutions;   (iii) transmitting,

15 clearing, settling, or distributing proceeds of transactions from financial institutions

16 to merchants; or (iv) processing returned transactions for merchants.

17 **III.   <u>PROHIBITED CONDUCT</u>**

18    **IT IS ORDERED** that the Bank, its officers, agents, servants, employees,

19 contractors, and attorneys, and all other persons in active concert or participation

20 with any of them who receive actual notice of this Consent Decree, whether acting

21 directly or indirectly, are in connection with any activities conducted by or through

22 the Bank **PERMANENTLY RESTRAINED** and **ENJOINED** from:

23    A.      Providing bank accounts or banking services to any Third-party

24 Payment Processor, except where the Bank certifies to the United States before the

25 start of banking activity, and thereafter, in accordance with Section IV., below, that

26 the Third-party Payment Processor is: (i) licensed as a money transmitter in the

27 state(s) into and from which money is transferred, or has provided to the Bank

28 documentation created by state licensing authorities stating that no state licensing is

1   required; and (ii) registered with the Financial Crimes Enforcement Network of the

2   U.S. Department of the Treasury ("FinCEN") as a "Money Services Business," or

3   has provided to the Bank documentation from FinCEN stating that no registration is

4   required.

5         B.    Delegating to a Third-party Payment Processor responsibility to

6   conduct due diligence (including but not limited to Customer Identification Program

7   requirements under 31 C.F.R. § 1020 et seq.) and monitoring of the Third-party

8   Payment Processor's merchants, or conducting due diligence and monitoring in any

9   respect differently than would be required if the merchants were direct customers of

10  the Bank.

11        C.    Providing ACH services, access, or processing, to any merchant

12  engaged in Telemarketing or Internet-based Business, directly or through a

13  Third-party Payment Processor, except where the Bank, in advance of providing

14  bank accounts or banking services and quarterly thereafter, has:

15        1.    completed all due diligence and underwriting of the merchant as

16  would be required of the Bank if the merchant was a direct customer of the Bank;

17        2.    established, after reasonable inquiry, in good faith, and to the

18  best of the Bank's ability and knowledge, that the merchant is not engaged in

19  fraudulent, unfair, deceptive, or abusive business practices against consumers in

20  violation of federal law or any such law of the state(s) (or tribal territory) in which

21  the merchant is located, and any law of the state(s) (or tribal territories) in which the

22  merchant's consumers are located;

23        3.    established, after reasonable inquiry, in good faith, and to the

24  best of the Bank's ability and knowledge, that the merchant is in compliance with:

25  (a) all licensing requirements, registration requirements, and legal standards relating

26  to fraudulent, unfair, deceptive, or abusive business practices of the state(s) in which

27  the merchant is located (or if the Bank has independently established that the

28  merchant is a tribal business, exclusively owned, operated by, and benefitting a

federally-recognized sovereign Native American nation, the laws of that Native American nation); (b) all licensing requirements, registration requirements, and legal standards relating to fraudulent, unfair, deceptive, or abusive business practices of the states (or tribal territories) in which each of the merchant's consumers reside; and (c) the rules of NACHA, the Electronic Payments Association; and

4.     memorialized in writing the conclusions of the activities in subparagraphs 1 through 3, and notified the United States that such information is available to the United States for inspection.

D.     Providing bank accounts or banking services to any Third-party Payment Processor that processes payments for any merchant that has surpassed the Return Rate Threshold; unless, within 45 days after the merchant has surpassed the Return Rate Threshold, the Bank certifies to the United States (in accordance with Section IV, below) that the Bank has:

1.     completed all due diligence and underwriting of the merchant as would be required of the Bank if the merchant was a direct customer of the Bank;

2.     sampled consumers by: (a) individually or jointly with the merchant, directly communicating by telephone with no fewer than twenty-five consumers of the merchant selected by the Bank who purportedly purchased the merchant's goods or services within the previous three months, and inquired of the consumers whether the consumers knowingly authorized debits by the merchant and whether the consumers believe they were the victim of fraud or abusive practices by the merchant; and provided the merchant's name and address, and the 25 or more consumers' names and telephone numbers, to the United States; or (b) another method of consumer sampling agreed upon in writing by the Bank and the United States.

3.     established, after reasonable inquiry, in good faith, and to the best of the Bank's ability and knowledge, that the merchant is not engaged in

fraudulent, unfair, deceptive, or abusive business practices against consumers in violation of federal law or any such law of the state(s) (or tribal territory) in which the merchant is located, and any such law of the state(s) (or tribal territories) in which the merchant's consumers are located;

   4. memorialized in writing the conclusions of the research and due diligence required under this paragraph; and

   5. notified the Bank's Board of Directors of the merchant's identity, due diligence results, total and unauthorized return rate history, and results of consumer sampling.

  If the Bank establishes that the merchant has been engaged in fraudulent, unfair, deceptive, or abusive conduct against consumers, or elects not to conduct the activities in subparagraphs 1 through 5 and instead to discontinue providing bank accounts or banking services to such merchant, the Bank shall within three business days cease all debiting of consumers' bank accounts, and shall terminate all banking services to such merchant of the Third-Party Payment Processor no later than 45 days after the merchant of the Third-party Payment Processor has surpassed the Return Rate Threshold except that nothing in this Consent Decree shall prevent the Bank from holding funds from such merchant, for up to 12 months, to be used to cover returned items by consumers who conducted transactions with such merchant.

  E. As an ODFI, accepting from a customer or Third-party Payment Processor any RCCs or RCPOs in connection with Telemarketing or Internet-based Businesses, unless authorized in advance by the United States.

  F. Continuing to process payments or provide banking services to any entity that the Bank has reason to believe is engaged in any unlawful or otherwise deceptive practices harming consumers.

## IV. CERTIFICATION REQUIREMENTS

  A. Beginning six months after the entry of the Consent Decree, and continuing every six months thereafter, the Bank shall certify that it is in compliance

with the Consent Decree.   The certification shall be in the form of the "Consent Decree Compliance Certification" attached hereto as Exhibit A.

The Consent Decree Compliance Certification and all other certifications required under the Consent Decree shall be in writing, executed by a Bank official with authority to bind the Bank, and executed in accordance with 28 U.S.C. § 1746. For five years from the date of the Court's entry of the Consent Decree, the Consent Decree Compliance Certification and all other certifications required under the Consent Decree shall be delivered to the United States within fifteen days of the date of the certification.

B.     Beginning six years after the date of the Court's entry of the Consent Decree until the tenth anniversary of the Court's entry of the Consent Decree, the Consent Decree Compliance Certification and all other certifications required under the Consent Decree shall be maintained by the Bank and shall remain available for inspection by the United States upon reasonable request.

C.     After ten years of the Court's entry of the Consent Decree, the Bank shall not be required to certify compliance with the Consent Decree, but shall continue permanently to be required to comply with all other terms of the Consent Decree.

## V.     TERMINATION UPON PERMITTED CHANGE IN CONTROL

If the Bank undergoes a Permitted Change of Control, then Sections III, IV, XII, XIII, XIV and XV of this Consent Decree will automatically terminate, unless the new entity resulting from the Permitted Change of Control retains Commerce West Bank employees, officers or directors who, from November 2011 to June 2013, had authority over onboarding, monitoring, due diligence or termination of merchants or third party payment processors, or in its Anti-Money Laundering/ Bank Secrecy Act department, and continues to employ them in those roles.   All non-monetary obligations required by this Consent Decree will terminate two years after a Permitted Change of Control.

**VI.   CIVIL MONEY PENALTY**

**IT IS FURTHER ORDERED** that:

A.     The Clerk is hereby ordered to enter judgment in the amount of One Million Dollars ($1,000,000.00) (the "Penalty Amount") in favor of the United States and against CommerceWest Bank as a civil money penalty.

B.     The Bank shall pay the Penalty Amount to the United States by payment to the United States Treasury within fourteen days of entry of this Consent Decree by electronic funds transfer in accordance with instructions to be provided by a representative of the United States.

**VII.   PAYMENT IN LIEU OF ADMINISTRATIVE FORFEITURE**

**IT IS FURTHER ORDERED** that:

A.     CommerceWest Bank shall pay One Million Dollars ($1,000,000.00) (the "Forfeiture Amount") to the United States Postal Inspection Service's Consumer Fraud Fund as proceeds of the conduct described in the Complaint.   Such payment must be made within fourteen days of entry of this Consent Decree by electronic funds transfer in accordance with instructions to be provided by a representative of the United States.   Such funds shall be moneys in which the Bank possesses exclusive ownership interest.

B.     The Bank relinquishes all right, title, and interest in the funds described in Section VII.A, above.   The Bank agrees and states that the funds described in Section VII.A, above, are forfeitable under 18 U.S.C. § 981(a)(1)(C) without need for further proceedings in support of such payment or forfeiture.

**VIII.  ADDITIONAL MONETARY PROVISIONS**

**IT IS FURTHER ORDERED** that:

A.     The Bank relinquishes dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Consent Decree and may not seek the return of any assets.

B.      In the event that the Bank defaults on the Civil Money Penalty provision of Section VI, or the Payment in Lieu of Administrative Forfeiture provision of Section VII, the facts alleged in the Complaint will be taken as true in any subsequent civil litigation by or on behalf of the United States to enforce its right to any payment or forfeiture.

C.      The Bank acknowledges that its Taxpayer Identification Number, which the Bank shall submit to the United States, may be used to collect and report on any delinquent amount arising out of this Consent Decree, in accordance with 31 U.S.C. § 7701.

## IX.   INTERNAL INVESTIGATION, RECCOMENDATIONS, AND BOARD ACTIONS

**IT IS FURTHER ORDERED** that no later than 30 days after the entry of the Consent Decree, the Bank shall submit to the Court the name of outside counsel that the Bank selects to conduct an internal investigation of the allegations in the Complaint, and to make recommendations to the Board of Directors based on the findings in the investigation.   Outside counsel retained for this purpose shall be an individual(s) selected on his or her merits, who, by reason of background, training, education, or experience, is qualified to assess the Bank's conduct as it pertains to the allegations in the Complaint, and who is without any personal or financial ties to the Bank, its officers, directors, and employees.

Upon approval by the Court of the selection of outside counsel, outside counsel shall investigate the allegations in the Complaint and report its findings and recommendations to the Bank's Board of Directors.   The Board of Directors shall take all actions necessary to assure that the conduct alleged in the Complaint does not occur in the future, and that the conduct of any of the Bank's officers, directors, and employees is appropriately addressed; such actions where appropriate may, at the discretion of the Board of Directors, include terminations from employment and removals from positions of authority to eliminate the continued risk of similar

1  violations.   All actions, including personnel actions, taken by the Bank's Board of
2  Directors as a result of the internal investigation, shall be reported to the United
3  States within ten days of the action being taken.

4  **X.   COOPERATION IN FURTHER INVESTIGATIONS**

5  **IT IS FURTHER ORDERED** that, for a period ending five years after the
6  date of the entry of the Consent Decree, the Bank shall cooperate fully and truthfully
7  with the United States in any civil, criminal, and/or administrative investigations
8  that involve the Bank's current and former officers, directors, and employees, the
9  Bank's current and former Third-party Payment Processor customers, and the
10  Bank's current and former Third-party Payment Processors' merchants.   Upon
11  reasonable notice, the Bank shall encourage and not impair the cooperation of its
12  directors, officers, and employees, and shall not impair the cooperation of former
13  directors, officers, and employees, for interviews and testimony, consistent with the
14  rights and privileges of such individuals.

15  The Bank's cooperation requires that it incur only reasonable costs or burden
16  associated with its cooperation, and shall include: (1) promptly providing to the
17  United States upon request, without formal legal process (subject to any restrictions
18  imposed by applicable law), all non-privileged documents, reports, memoranda of
19  interviews, and records in its possession, custody, or control, concerning any matter
20  under investigation by the United States, and (2) for a period of time ending three
21  years after the entry of the Consent Decree, facilitating to the best of its ability
22  interviews by the United States of the Bank's officers, directors, and employees to
23  be interviewed by the United States in Washington, D.C., or another mutually
24  agreed upon location, without waiver of any individual's rights and/or privileges.

25  **XI.   SCOPE OF RESOLUTION**

26  **IT IS FURTHER ORDERED** that this Consent Decree resolves only the
27  United States' civil claims against the Bank under FIRREA, 12 U.S.C. § 1833a, and
28  18 U.S.C. § 1345, in connection with the conduct alleged in the Complaint.

The Consent Decree does not release, or in any manner affect, other actual or potential claims of the United States, including the following, which are specifically reserved: (1) any criminal liability against the Bank, its officers, directors, or employees, or any other individual or corporate entity; (2) any civil liability against any individual or corporate entity, other than those alleged in the Complaint against the Bank; (3) any liability arising under Title 26, U.S. Code (Internal Revenue Code); (4) any administrative liability, including the suspension and debarment rights of any federal agency; and (5) any liability to the United States (or its agencies) whatsoever for any conduct other than civil claims against the Bank under FIRREA, 12 U.S.C. § 1833a, and 18 U.S.C. § 1345.

Nothing in this paragraph or any other provision of this Consent Decree constitutes an agreement by the United States concerning the characterization of the civil money penalty for purposes of the Internal Revenue laws, Title 26 of the United States Code.

The injunctive provisions of this Consent Decree are intended to supplement, and not supersede, due diligence and other legal requirements imposed by state and federal law.

## XII. <u>ORDER ACKNOWLEDGMENTS</u>

**IT IS FURTHER ORDERED** that the Bank obtain acknowledgments of receipt of this Order:

A. The Bank, within seven days of entry of this Consent Decree, must submit to the United States an acknowledgment of receipt of this Consent Decree. For five years after entry of this Consent Decree, the Bank must deliver a copy of this Consent Decree to: (1) each principal, executive officer, and/or director; (2) each manager, employee, agent, and/or representative who reviews or approves agreements and applications of Third-party Payment Processors the merchants with which the Third-party Payment Processor does business, and/or any Telemarketing merchant or Internet-based Business with which the Bank transacts business; and (3)

any business entity resulting from any change in structure as set forth in Section XIV – Compliance Reporting.   Delivery must occur within fourteen days of entry of this Consent Decree for current personnel.   For all others, delivery must occur before they assume their responsibilities.   From each individual or entity to which the Bank delivers a copy of this Consent Order, the Bank must obtain within 30 days a signed and dated acknowledgment of receipt of this Consent Decree.

## XIII.  **COMPLIANCE MONITORING**

**IT IS FURTHER ORDERED** that, for the purpose of monitoring the Bank's compliance with this Consent Decree, the Bank must, within 30 days of receipt of request from a representative of the United States Department of Justice: (a) submit additional compliance reports or other requested information; (b) appear for depositions; and, (c) produce documents for inspection.   Nothing in this section shall preclude the Bank from redacting from such documents any materials it reasonably believes is protected by the attorney work-product doctrine, attorney-client privilege, or other applicable privilege.

## XIV.  **COMPLIANCE REPORTING**

**IT IS FURTHER ORDERED** that the Bank make timely submissions to the United States:

A.      One year after entry of this Consent Decree, the Bank must submit to the United States a compliance report in which it: (a) designates the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the United States may use to communicate with the Bank; (b) describe in detail whether and how the Bank is in compliance with each Section of this Consent Decree; and (c) provide a copy of each Consent Decree Acknowledgment, described in Section XII, pursuant to this Consent Decree, unless previously submitted to the United States.

B.      For five years after entry of this Consent Decree, the Bank must submit a compliance notice within 30 days after any change in the following: (a) any

designated point of contact; and (b) the structure of the Bank or any entity that the Bank has any ownership interest in or that it controls directly or indirectly that may affect compliance obligations arising under this Consent Decree, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Consent Decree.

C.      The Bank must submit to the government notice of the filing of any bankruptcy petition, insolvency proceeding, or any similar proceeding by or against such the Bank within 30 days of its filing.

## XV.   RECORDKEEPING

**IT IS FURTHER ORDERED** that the Bank must retain the following records created or relating to the time period January 1, 2010, to the present, for five (5) years from the entry of the Consent Decree:

A.      All records relating to Third-party Payment Processors with which the Bank has done business, and the merchants that have used such processors to transact business through the Bank's facilities;

B.      Personnel records showing, for each person who corresponded with, reviewed, or authorized, transactions through Third-party Payment Processors, whether as an employee or acting in another capacity on behalf of the Bank, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.      Records of all returns for transactions processed through Third-party Payment Processors;

D.      Records of all consumer complaints, whether received directly or indirectly, such as through a third-party, and any response; and

E.      All records necessary to demonstrate full compliance with each provision of this Consent Decree, including all submissions to the United States.

F.      The records retention requirements of this Section are in addition to, and not in lieu of, any other requirements imposed by state or federal law.

## XVI. <u>SUBMISSIONS TO THE UNITED STATES</u>

**IT IS FURTHER ORDERED** that all submissions by the Bank to the United States Department of Justice required under this Consent Decree shall be in writing and delivered by hand or overnight courier to:   Director, Consumer Protection Branch, U.S. Department of Justice, 450 Fifth Street, Washington, D.C.   20001. The Bank expressly acknowledges that the information obtained by the United States in connection with its investigation of the Bank, including information submitted by the Bank to the United States pursuant to this Consent Decree, may be shared for official purposes with federal, state, and local law enforcement, and other agencies and entities of the United States (including but not limited to the Federal Trade Commission, the Consumer Financial Protection Bureau, and other bank regulatory agencies).

## XVII. <u>MODIFICATION OF THE CONSENT DECREE</u>

The Bank and/or the United States may petition the Court for modification of the Consent Decree.

## XVIII. <u>RETENTION OF JURISDICTION</u>

**IT IS FURTHER ORDERED** that this Court retains exclusive jurisdiction of this matter for purposes of construction, modification, and enforcement of this Consent Decree.


**ORDERED** this _____day of _____, 2015.



_____

UNITED STATES DISTRICT JUDGE

CONSENTED TO BY:

_____

**IVO TJAN**
Chairman and Chief Executive Officer,
CommerceWest Bank
On behalf of CommerceWest Bank

_____

**JEFFREY B. COOPERSMITH**
**MARK N. BARTLETT**
Davis Wright Tremaine LLP
Counsel for CommerceWest Bank

17

1

2 **MICHAEL S. BLUME**

3 Director, Consumer Protection Branch
**RICHARD GOLDBERG**

4 Assistant Director, Consumer Protection Branch

5 **JOHN W. BURKE**
Trial Attorney, Consumer Protection Branch

6 United States Department of Justice

7 450 Fifth Street, NW, Suite 6400 South

8 Washington, D.C. 20001
Telephone:   (202) 353-2001

9 Facsimile:   (202) 514-8742

10 Email:        Josh.Burke@usdoj.gov

11

12

13 On behalf of the United States of America

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3 **STEPHANIE K. YONEKURA**
Acting United States Attorney

4 **LEON W. WEIDMAN**
Assistant United States Attorney

5 Chief, Civil Division

6 **ANOIEL KHORSHID**

7 Assistant United States Attorney (California Bar #223912)
300 N. Los Angeles Street, Suite 7516

8 Los Angeles, California 90012

9 Telephone:   (213) 894-6086
Facsimile:   (213) 894-7819

10 Email:         Anoiel.Khorshid@usdoj.gov

11

12 On behalf of the United States of America

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

No.:

      Plaintiff,

         v.

COMMERCEWEST BANK,

      Defendant.

## CONSENT DECREE COMPLIANCE CERTIFICATION

The undersigned certifies, pursuant to Section IV of the Consent Decree entered by the United States District Court for the Central District of California on _____, 2015, in the above captioned matter that:

1. CommerceWest Bank has provided or is providing bank accounts or banking services to the following Third-party Payment Processor(s), as defined in Paragraph K of Section II of the aforementioned Consent Decree:

    _____

    _____

    _____;

2. The Third-party Payment Processor(s) identified above is: (i) licensed as a money transmitter in the state(s) into and from which money is transferred, or has provided to CommerceWest Bank documentation created by state licensing authorities stating that no state licensing is required; and (ii) registered with the Financial Crimes Enforcement Network of the U.S. Department of the Treasury ("FinCEN") as a "Money Services Business," or

has provided to the Bank documentation from FinCEN stating that no registration is required;

3.   CommerceWest Bank is conducting due diligence and monitoring of the merchants of the Third-party Payment Processor(s) identified above as if these entities were direct customers of CommerceWest Bank;

4.   Prior to providing any banking accounts or banking services and quarterly thereafter, CommerceWest Bank has conducted due diligence of any merchant engaged in Telemarketing or Internet-based Businesses (directly or through a Third-party Payment Processor) as if these entities were direct customers of CommerceWest Bank;

5.   Prior to providing any banking accounts or banking services and quarterly thereafter, CommerceWest Bank has established, after reasonable inquiry, in good faith, and to the best of CommerceWest Bank's ability and knowledge, that any merchant engaged in Telemarketing or Internet-based Business:

   a.   Is in compliance with any applicable licensing or registration requirement of the state(s) (or tribal territories) in which the merchant is located and in which the merchants customers are located; and

   b.   Is not engaged in fraudulent, unfair, deceptive, or abusive business practices against consumers in violation of federal law or any such law of the state(s) (or tribal territory) in which the merchant is located, and any such law of the state(s) (or tribal territories) in which the merchant's customers are located;

6.   CommerceWest Bank has memorialized in writing the conclusions of the due diligence and investigation of the merchants of the Third-party Payment Processor(s) identified above, as required by Section III.C.4 and, if applicable, Section III.D.4, of the Consent Decree, and such information is available to the United States Department of Justice for inspection; and

7.     CommerceWest Bank, as an Originating Depository Financial Institution, is not accepting from a customer or Third-party Payment Processor any Remotely-created Checks or Remotely-created Payment Orders in connection with Telemarketing or Internet-based Business.

The undersigned further certifies that he/she has authority to bind CommerceWest Bank for the purposes of this certification.

I declare under the penalty of perjury that the foregoing is true and correct.

_____

Name: _____

Title:  _____

Date:  _____